**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| THOMAS NEILSON | : | |
| | : | |
| | : | |
| v. | : | Civil Case No. CCB-11-3317 |
| | : | |
| | : | |
| THE UNUM LIFE INSURANCE CO. | : | |
| OF AMERICA, *et al.* | : | |

**MEMORANDUM**

Plaintiff Thomas Neilson brought this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1461, appealing the denial of long-term disability benefits under an insurance policy issued by defendant The Unum Life Insurance Co. of America ("Unum") through his employer, defendant The Williams Companies, Inc. ("Williams"). The parties have filed cross-motions for summary judgment. For the reasons set forth below, the defendants' motion will be granted and Neilson's will be denied.

**BACKGROUND**

Neilson was a pipeline technician with the Williams Companies through the beginning of 2008, a job that required, according to an occupational assessment conducted by Unum, significant exertion including "lifting, carrying, pushing, pulling 20-50 lbs. occasionally, 10-25 lbs. frequently or up to 10 lbs. constantly." (Admin. Record ("R.") at 1586, 1597-98).[1] Neilson disputes this assessment, arguing that the exertional demands of his job were considerably higher. After receiving "posterior lumbar decompression and fusion surgery" in May 2008, Neilson sent Unum a claim for Long Term Disability ("LTD") benefits through the disability

---

[1] For simplicity, the court will refer only to the administrative record's page numbers. Each page is bates stamped UA-CL-LTD-######.

insurance policy Neilson was covered under as a benefit of his employment at Williams ("Policy"). (R. at 139-141) (acknowledging receipt of claim).

The Policy makes it abundantly clear that it provides Unum with discretionary authority to determine benefits eligibility under the standards governed by ERISA. (*See* Policy at 12, 34, 40) ("In exercising its discretionary powers under the Plan, the Plan Administrator and any designee (and Unum as a claims fiduciary) will have the broadest discretion permissible under ERISA and any other applicable laws, and its decisions will constitute final review of your claim by the Plan."). The Policy defines "disability" differently depending on how long a policyholder has been receiving LTD benefits:

> You are disabled when Unum determines that:
>
> -you are **limited** from performing the **material and substantial duties** of your **regular occupation** due to your **sickness** or **injury**; and . . .
> -during the elimination period, you are unable to perform any of the material and substantial duties of your regular occupation.
>
> After 24 months of payments, you are disabled when Unum determines that due to the same sickness or injury, you are unable to perform the duties of any **gainful occupation** for which you are reasonably fitted by education, training or experience. . . .
>
> We may require you to be examined by a physician, other medical practitioner and/or vocational expert of our choice. . . .

(*Id.* at 16) (emphasis in original). The Policy explicitly states that Unum "will stop sending . . . payments . . . after 24 months of payments, when you are able to work in any gainful occupation on a part-time basis but you choose not to." (*Id.* at 21).The Policy defines "gainful occupation" as "an occupation that is or can be expected to provide you with an income within 12 months of your return to work, that exceeds . . . 80% of your indexed monthly earnings, if you are working" (or 60% if the policyholder is not). (*Id.* at 30).

2

Unum approved Neilson's LTD claim in August 2008 and he began receiving benefits on August 7, 2008 (after the Policy's "elimination period"). (R. at 211-13). The letter approving Neilson's benefits stated: "Although we are approving benefits at this time, you must continue to meet the definition of disability in your policy in order to qualify for ongoing benefits." (*Id.*). Neilson subsequently received benefits for almost 26 months, until October 4, 2010, when Unum informed Neilson that he no longer met the definition of "disability" under the Policy. (R. at 2421-2427). As indicated above, the definition of disability changes under the Policy after 24 months of benefits. After two clinical reviews and a comprehensive medical review, an additional comprehensive medical review conducted by an orthopedic surgeon concluded that, while Neilson could not return to his "usual work activities" he was capable of performing sedentary activities. (R. at 1830). Thus, Unum determined that he was not disabled under the "any occupation" definition of disability that applies to claims beyond 24 months.

Before terminating benefits, however, Neilson's claim received another medical review by the doctor that had conducted his first medical review, and she similarly concluded that Neilson was not "permanently and totally disabled" and that he was capable of sedentary work. (R. at 2400-01). Another medical review was conducted in September 2010, and that doctor, an orthopedic surgeon, concurred with prior assessments, noting that Neilson had been discharged from physical therapy and was managing his pain without the need for additional pain management options. (R. at 2406-07). This reviewer disagreed (as the other reviewers had) with Neilson's treating internist, Dr. Billet, who had concluded that Neilson was "totally disabled." (*Id.*). Neilson's treating orthopedic surgeons, however, independently submitted documentation to Unum stating that Neilson should be restricted to sedentary work, but that he was not "totally disabled." (R. at 1822, 2406-07).

Nonetheless, given Dr. Billet's opinion and Neilson's known pain issues, Neilson's file was referred to a behavioral specialist to determine whether Neilson was mentally incapable of work. (R. at 2406-07). Unum's behavioral medical reviewer, a psychiatrist and neurologist, concluded that Dr. Billet "ha[d] not provided standard, accepted medical evidence to support a psychiatrically impairing condition that would preclude work[.] . . . [T]he lack of treatment intensity/frequency and medication dose, as well as communications with the claimant's treating providers provide evidence that contradicts a finding of impairment based on psychiatric condition." (R. at 2410). Based on these reviews, Unum determined that Neilson was not disabled as of October 4, 2010, the date of the psychiatric review. Neilson appealed Unum's decision, which was affirmed by an outside medical consultant on April 5, 2011. (R. at 10953-10964).[2] Neilson subsequently filed this action, arguing that Unum abused its discretion in denying Neilson continuing LTD benefits.[3]

## ANALYSIS

I.   **Standard of Review**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this

---

[2] Inexplicably, Neilson attempts to introduce evidence of Unum's outside medical consultant's own disabilities to suggest that he was not qualified to review Neilson's appeal. (*See* Pl.'s Mem., ECF No. 39, at 8-9). The fact that this reviewer may be a "quadriplegic" has absolutely no bearing on his qualifications and Neilson's assertion otherwise, under the circumstances, is troubling.

[3] Neilson's complaint also alleges that he is entitled to administrative penalties because the defendants failed to respond to requests for documentation, but Unum fully addressed those allegations in its motion for summary judgment, (*see* Defs.' Mem., ECF No. 38-1, at 34-39), and Neilson has not addressed the issue or pressed his claim in any subsequent filing. Accordingly, the defendants are entitled to summary judgment on this claim.

standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). Whether a fact is material depends upon the substantive law. *See id.*

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the [summary judgment] motion,'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alteration in original) (quoting *United States v. Diebold*, 369 U.S. 654, 655 (1962)), but the court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (internal quotation marks omitted).

"When both parties file motions for summary judgment, the court applies the same standards of review." *Loginter S.A. Y Parque Indus. Agua Profunda S.A. Ute v. M/V NOBILITY*, 177 F. Supp. 2d 411, 414 (D. Md. 2001) (citing *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991)). "The role of the court is to 'rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Id.* (quoting *Towne Mgmt. Corp. v. Hartford Acc. & Indem. Co.*, 627 F. Supp. 170, 172 (D. Md. 1985)).

## II. Denial of Insurance Benefits

ERISA authorizes individuals to bring an action in federal court for wrongful denial of insurance benefits. 29 U.S.C. § 1132(a)(1)(B). Where, as here, the ERISA plan confers discretionary authority on the plan administrator, the court reviews the administrator's decision under an abuse-of-discretion standard. *See Johanssen v. Dist. No. 1–Pac. Coast Dist., MEBA Pension Plan*, 292 F.3d 159, 168 (4th Cir. 2002) (citing *Feder v. The Paul Revere Life Ins. Co.*, 228 F.3d 518, 522 (4th Cir. 2000)). Under this standard, an administrator's "discretionary decision will not be disturbed if reasonable, even if the court itself would have reached a different conclusion." *Smith v. Cont'l Cas. Co.*, 369 F.3d 412, 417 (4th Cir. 2004) (quoting *Booth v. WalMart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 341 (4th Cir. 2000))

A denial of benefits will be considered reasonable and will not be overturned under the abuse of discretion standard if the decision "is the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Evans v. Eaton Corp. Long Term Disability Plan*, 514 F.3d 315, 322 (4th Cir. 2008) (quoting *Bernstein v. CapitalCare, Inc.*, 70 F.3d 783, 788 (4th Cir. 1995)). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion," *DuPerry v. Life Ins. Co. of N. Am.*, 632 F.3d 860, 869 (4th Cir. 2011) (quoting *LeFebre v. Westinghouse Elec. Corp.*, 747 F.2d 197, 208 (4th Cir. 1984)), and "consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance," *LeFebre*, 747 F.2d at 208 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

The Fourth Circuit has identified eight nonexclusive factors that may be considered by courts in determining whether an abuse of discretion occurred:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4)

> whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Champion v. Black & Decker (U.S.) Inc.*, 550 F.3d 353, 359 (4th Cir. 2008) (quoting *Booth*, 201 F.3d at 342–43). A plan administrator has a "structural conflict of interest" where, as here, the administrator is "responsible for both evaluating and paying claims." *DuPerry*, 632 F.3d at 869–70 (4th Cir. 2011) (citing *Williams v. Metro. Life Ins. Co.*, 609 F.3d 622, 632 (4th Cir. 2010)). "[S]uch a conflict does not alter the applicable standard of review, but rather is 'but one factor among many that a reviewing judge must take into account.'" *Id.* at 869 (quoting *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 116 (2008)).

Neilson argues that Unum's denial was unreasonable in light of the substantial evidence in the administrative record that he was suffering from a painful orthopedic condition. Neilson points to eleven bases for finding that Unum abused its discretion: (1) Unum never demonstrated "improvement" in Neilson's condition; (2) Unum "denied benefits based on an inappropriate standard of disability;" (3) no independent medical exam was conducted; (4) Unum undertook a selective review of the medical evidence; (5) provider opinions were not afforded appropriate weight; (6) Unum's use of medical reviewers is irrelevant; (7) Unum undertook an "incorrect and unreasonable vocational review"; (8) Unum gave insufficient weight to the Social Security Administration's ("SSA's") determination that Neilson was disabled; (9) Unum disregarded Neilson's "extensive use of pain medication;" (10) Neilson's "reduced postural maneuver and hand use abilities are disabling;" and (11) the administrative file was "replete with duplicative documents." Each of these arguments will be addressed in turn, but none independently or collectively support a finding that Unum abused its discretion in denying Neilson's claim.

7

**(1) "Improvement"**

Neilson first argues that Unum abused its discretion by "reversing" its earlier granting of disability benefits to Neilson. He argues that it is Unum's responsibility to demonstrate that Neilson improved to the point where he was no longer disabled. This argument demonstrates a fundamental misunderstanding of the definition of "disability" under the Policy. As explained above, a policyholder is considered "disabled" under the Policy, for the first 24 months of benefits, so long as he or she is unable to perform the duties of his or her "regular occupation." (Policy at 16). After 24 months, however, the policyholder is not "disabled" unless he or she is unable to perform the duties of *any* gainful occupation (for which he or she is qualified). (*Id.*). Setting aside Neilson's incorrect assertion that Unum had a duty to adduce evidence supporting or rebutting his disability claim, (*see* Policy at 21-22); *see also Elliott v. Sara Lee Corp.*, 190 F.3d 601, 603, 608 (4th Cir. 1999), the evidence in the administrative record supports Unum's determinations both that Neilson was unable to perform the physical demands of his regular occupation, which required significant lifting and other movement, and that he was *not* unable to perform the duties of a more sedentary occupation. Unum never suggested that Neilson "improved" nor did it take such a conclusion into account when terminating his LTD benefits. Rather, the time had elapsed under the "regular occupation" portion of his benefits and, after a thorough review, Unum determined that Neilson was not unable to undertake *any* occupation.

**(2) "Standard of Disability"**

Neilson next argues that Unum applied "an inappropriate standard of disability" by stating that there was an absence of "objective medical evidence that would show that Mr. Neilson was unable to sustain activities at a sedentary level." (Defs.' Mem. at 12). Neilson suggests that this statement (and a corresponding one in a letter to Neilson's attorney)

8

demonstrates that Unum incorporated some additional standard into the definition of disability beyond what is contained in the Policy itself. To the contrary, Unum's statements only reinforce that it conducted a thorough examination of Neilson's medical records and concluded that he was capable of performing sedentary work and that, in Unum's opinion, no evidence supported a different conclusion. Unum did not rely entirely, or even predominantly, on the absence of "objective" evidence. The insurer considered all of the opinions of Neilson's treating physicians and conducted a mental health review to determine whether pain or psychological symptoms precluded Neilson from working. (*See* R. at 2409-11). There is no indication that, here, Unum applied a more stringent standard than the one written in the Policy.

    **(3) Independent Medical Examination**

Neilson further argues that Unum was arbitrary and capricious in failing to conduct an independent medical examination "[d]espite clear policy language allowing for [such an] examination." (Pl.'s Mem. at 22). While the Policy certainly *permits* Unum to demand an independent examination, it does not require one. (Policy at 16). Here, Unum had multiple doctors of varying specialties review Neilson's entire medical record and it relied on opinions from Neilson's treating physicians. While Neilson's internist believed he was unable to work at all, his treating orthopedic surgeons believed his capabilities were only limited to sedentary work. (R. at 1822, 2406-07). Unum had an abundance of medical evidence and did not require an independent examination. Neilson points to *Carroll v. Prudential Insurance*, an unreported District of Maryland opinion from January 8, 2007 (*see* Pl.'s Mem., Ex. 4 ("*Carroll* Transcript"), ECF No. 39-5), for the proposition that it is "arbitrary and capricious for an insurer to deny a claim based on allegations of pain without examining a [c]laimant . . ." (Pl.'s Mem. at 22). Notwithstanding that unreported cases have no precedential weight, the court in *Carroll*

determined that the defendant insurer abused its discretion (although it was evaluating the claim under a *de novo* standard) by failing to conduct any independent verification of the plaintiff's pain complaints. (*See Carroll* Transcript at 5-7). Here, the administrative record demonstrates that Unum carefully assessed Neilson's medical records, including making direct contact with his attending physician Dr. Billet, and ultimately concluded that his chronic pain condition did not preclude sedentary work. (*See* R. at 2406-2410). It is unclear what more an independent medical examination would have accomplished or provided, given the scope of the data relied on by Unum.

### (4), (5), & (6) "Selective Review of Medical Evidence," Provider Opinions, Use of "Medical Reviews"

Neilson also argues that Unum selectively ignored evidence that Neilson was unable to work even at a sedentary level in order to deny his LTD benefits and that Unum failed to give appropriate weight to Neilson's treating provider opinions. First, Unum has not abused its discretion under ERISA so long as there is "substantial evidence" supporting its determination, which, as explained above, is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." *LeFebre*, 747 F.2d at 208 (quoting *Laws*, 368 F.2d at 642). Thus, the mere fact that Neilson can point to some evidence, particularly Dr. Billet's determination that he was totally disabled, to rebut Unum's determination does not undermine Unum's overall assessment of his medical record. Second, so long as insurers credit treating physician opinions, they need not afford them special weight or deference. *See Evans*, 514 F.3d at 324-25 (quoting *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003)); *Elliott*, 190 F.3d at 607-08. Furthermore, the record demonstrates that Unum did, in fact, pay particular attention to Dr. Billet's opinion in assessing Neilson's claim, but Unum also credited his treating orthopedists

who disagreed with Dr. Billet and believed Neilson was capable of sedentary work. (*See, e.g.*, R. at 1822, 1829-30, 2398-2410). While Neilson has obviously undergone a significant impairment in his abilities and is suffering as a result, he is equally not entitled to selectively point to medical records in seeking LTD benefits, nor may he insist that one of his physicians be credited over others. Unum made a reasonable determination, based on Neilson's entire medical record, that he is capable of work, albeit in a diminished capacity relative to his prior career. And, in light of the record, Neilson's argument that "the use of medical reviewers does not bolster [Unum's] claim denial" is meritless—Unum's use of multiple and thorough medical reviewers of varying backgrounds was reliable and appropriate under the circumstances.

**(7) Vocational Review**

Neilson's argument that Unum applied the wrong job title in assessing Neilson's ability to work reflects the same fundamental misunderstanding of the term "disability" under the Policy contained in his argument that Unum pointed to no evidence of "improvement" in his condition (*see* **(1)** above). Both arguments rely on the same misconception that, after 24 months of benefits, Unum still needed to rely on Neilson's prior occupational demands in assessing his ability to work. Certainly, Unum could not completely disregard Neilson's "education, training, and experience" in determining whether he could obtain "any" occupation. But, given that he was found to be capable of sedentary work, Unum's determination that he was qualified for such work was not an abuse of discretion. Otherwise, Neilson's suggestion that Unum should have taken into account the exertional demands of his previous job is incorrect. In fact, Neilson's argument that Unum applied an "incorrect" job title that required less exertion than his actual job in its "regular occupation" analysis, (*see* Pl.'s Mem. at 32), reflects favorably on the insurer. Unum determined that, even under this less exertional job, Neilson was disabled during the 24-

11

month "regular occupation" coverage period. This conclusion says nothing, however, about Unum's subsequent determination that Neilson was able to perform a sedentary job with significantly less exertional demands than his "regular occupation."

Unum also did not abuse its discretion by failing to consider whether Neilson could obtain gainful sedentary employment because the insurer did, in fact, conduct a vocational assessment that included an assessment of sedentary jobs, available in Neilson's geographic area, for which he would be qualified. (*See* R. at 1842-47). Under the circumstances, Unum was under no obligation to conduct a more extensive labor market survey or other evaluation. *See Pipenhagen*, 640 F. Supp. 2d at 790-91; *see also Piepenhagen v. Old Dominion Freight Line, Inc.*, 395 F. App'x 950, 957 (4th Cir. 2010).[4]

**(8) SSA Determination**

Neilson next argues that Unum's determination was arbitrary and capricious because it failed to defer to the SSA's determination that Neilson was entitled to Social Security disability benefits. Unum was under no obligation to defer to the SSA's determination because Social Security is governed by an entirely different set of statutes and regulations from ERISA. *See Smith v. Continental Cas. Co.*, 369 F.3d 412, 418-20 (4th Cir. 2004); *Nord*, 538 U.S. at 833 ("In determining entitlement to Social Security benefits, the adjudicator measures the claimant's condition against a uniform set of federal criteria. The validity of a claim to benefits under an ERISA plan, on the other hand, is likely to turn, in large part, on the interpretation of terms in the plan at issue.") (quoting *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989) (internal quotation marks and alteration omitted). Nevertheless, because the Policy's definition of disability was similar to the SSA's definition (both consider whether the claimant is capable

---

[4] Unpublished cases are cited for the soundness of their reasoning, not for any precedential value.

of "any" gainful employment), *see* 20 C.F.R. § 404.1505(a), it is appropriate to consider whether the SSA's determination is evidence that Unum abused its discretion. *See Smith*, 369 F.3d at 420; *see also Piepenhagen v. Old Dominion Fright Line, Inc.*, 640 F. Supp. 2d 778, 793-94 (W.D. Va. 2009). The administrative record demonstrates that Unum did, in fact, take the SSA's determination into account and found that its own reviews were more thorough than the SSA's. (*See* R. at 2413-14). Thus, Unum afforded the SSA determination appropriate weight and concluded that it did not affect the analysis of Unum's own experts.

### (9) & (10) Pain Medication; Postural Maneuver and Hand Disabilities

Neilson points to *McKoy v. Int'l Paper Co.*, 488 F.3d 221 (2007) for the proposition that "the failure to consider the effects of medications taken has been found to [be] arbitrary and capricious." (Pl.'s Mem. at 35). Generally, this may be true. In *McKoy*, however, the Fourth Circuit determined that a denial of benefits was "procedurally and substantively unreasonable" because, after determining that a claimant was capable of sedentary work, the defendant insurer ignored "new information" submitted by the claimant, from "the Social Security Administration, a psychologist, a vocational evaluator, and an internist, demonstrating substantial cognitive defects in addition to his physical injury." *McKoy*, 488 F.3d at 222. The claimant's file was evaluated only by an orthopedist after it was reopened, even in light of the evidence of a mental disability. *Id.* at 224. Here, not only did Unum thoroughly consider Neilson's complaints of pain and use of pain medication, it submitted his file for review by a psychiatrist and neurologist to determine whether he had a mental disability that would preclude work, setting aside his physical impairments. (*See* R. at 2409-11). The record does not support Neilson's assertion that Unum ignored Neilson's pain condition in making its determination, nor does *McKoy* suggest that Unum abused its discretion in evaluating Neilson's claim. (*See also* R. at 2414) ("The insured's

reported activities, pain medication regiment and lack of referral to pain management is not consistent with impairment related to pain.").

Similarly, Neilson's assertion that Unum ignored his limited maneuvering and "hand use" abilities is also without merit. Although Neilson's reference to "hand use ability" suggests that the record contains evidence Neilson suffered from difficulty using his hands, Neilson elaborates that he is referring to "reaching" as a "hand use ability," (*see* Pl.'s Mem. at 36), and the record indicates that Unum knew about his difficulty reaching and considered this, along with Neilson's other physical limitations, in arriving at its conclusion. (*See* R. at 1504-07; 1673-74; 2391-92); (*see also* R. at 2414) ("Mr. Neilson described daily activities that included light housework, light yard work, laundry, light meal preparation, driving, going to stores, going to church, and hunting and fishing on rare occasions."). Neilson does not point to any specific physical limitation that would preclude sedentary work. Unum's determination that Neilson was capable of sedentary work was not unreasonable or an abuse of discretion.

### (11) Duplicative Documents

Finally, Neilson asserts that Unum included "multiple copies of many documents in an attempt to 'bulk' the file to make it appear that actual analysis or review had been undertaken." (Pl.'s Mem. at 39). Assuming that an attempt to "bulk" a file could ever be relevant in assessing a denial of benefits under ERISA, Unum had no need to "bulk" Neilson's file because, as demonstrated by the record citations throughout this memorandum, Unum conducted multiple, thoroughly reasoned reviews of Neilson's medical records and had no need to pretend it did more than the evidence shows it actually did.

## CONCLUSION

For the reasons stated above, the defendants' motion for summary judgment will be granted and Neilson's will be denied.[5]

A separate Order follows.

March 13, 2013                                           /s/
     Date                                      Catherine C. Blake
                                      United States District Court

---

[5] The defendants also filed a motion for leave to file a surreply. Because the additional material submitted by Neilson was not relevant, no surreply is necessary and the motion will be denied.